IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| HECTOR MANUEL BOSSIO, JR., | ) | |
| Reg. No. 65946-198, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:17-CV-704-WHA-JTA |
| | ) | [WO] |
| COL. ROBINSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Hector Bossio ("Bossio") filed this 42 U.S.C. § 1983 action, proceeding *pro se*, on October 18, 2017, during his incarceration at the Montgomery County Detention Facility ("MCDF") in Montgomery, Alabama.[1]  Bossio sues Colonel Wanda Robinson ("Robinson"), Captain James Dill ("Dill"), and Officer Angela Moorer ("Moorer"), complaining they confiscated his legal papers and religious books when he was booked into the county jail and failed to allow him access to these materials.  For relief, Bossio seeks the return of his confiscated property, $3,000 from each defendant, and costs and legal fees.  Doc. 1 at 2–6.

Defendants filed an answer, special report, an amended special report, and supporting affidavits and evidentiary materials addressing the claims in the complaint.  Docs. 13, 20, 21, 22. In these documents Defendants deny they acted in violation of Bossio's constitutional rights. Defendants further argue that prior to filing this cause of action Bossio failed to properly exhaust an administrative remedy available to him at MCDF regarding his claim that Defendants

---

[1] Since filing the complaint, Bossio has been transferred to federal custody and is currently incarcerated at the U.S. Penitentiary in Lewisburg, Pennsylvania.  Doc. 55.

confiscated and denied him access to his religious books.  Defendants base their exhaustion defense on Bossio's failure to file a grievance regarding that claim.  Doc. 21 at 9–10.

Upon receipt of Defendants' special reports, the court issued an order providing Bossio an opportunity to file a response.  This order directed Bossio to address Defendants' arguments that: "(i) [s]ome of Plaintiff's claims are due to be dismissed because he failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act [prior to filing this federal civil action] . . . ; and (ii) [t]he claims contained in the complaint fail to establish a violation of his constitutional rights by Defendants."  Doc. 23 at 1–2 (footnote omitted).  The order advised Bossio his response should be supported by affidavits, statements made under penalty of perjury, or other appropriate evidentiary materials.  Doc. 23 at 3.  The order further cautioned Bossio that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is appropriate, and (2) after considering any response as allowed by this order, rule on the motion in accordance with the law."  Doc. 23 at 3.  Bossio responded to Defendants' reports, *see* Doc. 24, but his response does not demonstrate there is any genuine dispute of material fact. The court will treat Defendants' special reports as a motion for summary judgment and resolve this motion in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of

law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322−324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party could not prove his case at trial).

When Defendants meet their evidentiary burden, as they have, the burden shifts to Bossio to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the

nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein,* 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are

self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'").  However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact.  *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, a plaintiff's *pro se* status alone does not mandate this court disregard elementary principles of production and proof in a civil case.  Here, Bossio fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants.  *See Matsushita*, 475 U.S. at 587.

## II. DISCUSSION

### A.    Sovereign Immunity

To the extent Bossio sues Defendants in their individual and official capacities, they are entitled to sovereign immunity from monetary damages in their official capacity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (citation and quotation marks omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849. "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B. Qualified Immunity

In response to Bossio's allegations, Defendants argue they are entitled to qualified immunity in their individual capacities. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would

have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted).  To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the conduct about which Bossio complains occurred. Bossio must, therefore, allege facts that, when read in a light most favorable to him, show Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Bossio must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original).  "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted).  The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the

highest court in the relevant state." *Id.* at 1209.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted).  The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted).  "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted).  If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

### C.      Section 1983 Claims[2]

#### 1.      Property Loss

Bossio's suit, to the extent it seeks relief based upon a contention that the Defendants intentionally confiscated his property when they booked him into the county jail, fails to implicate the due process protection afforded by the Constitution as neither a negligent deprivation of property nor "an unauthorized intentional deprivation of property by a state employee constitute[s]

---

[2] To the extent Bossio raises additional allegations of constitutional violations through any properly supported opposition which were not affirmatively pled in his complaint, the law is settled that a plaintiff may not "amend" his complaint through his opposition by raising a new claim(s). *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting a new basis for a pending claim raised during summary judgment proceedings); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (finding the Rules of Civil Procedure do "not afford plaintiffs with the opportunity to raise new claims at the summary judgment stage.").  The court, therefore, addresses Bossio's claims against Defendants as alleged in the complaint and considers the facts only to the extent that they support those claims.

a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986) (holding that inmate's claim that deputy marshal failed to return ring to inmate, whether due to negligence or an intentional act, provided no basis for relief as neither a negligent loss of property nor an unauthorized intentional deprivation of property constitutes a violation of due process.); *Holloway v. Walker*, 790 F.2d 1170, 1173–74 (5th Cir. 1986) (holding there was no breach of federally guaranteed constitutional rights, even where high level state employee intentionally engages in tortious conduct, as long as the state system as a whole provides due process); *see also Daniels v. Williams,* 474 U.S. 327, 330–31 (1986) (finding negligent acts are insufficient as a basis for liability under § 1983).

The State of Alabama, through its Board of Adjustment, provides a meaningful post-deprivation remedy for Bossio to seek redress for Defendants' alleged improper confiscation of his personal property.  *See* Ala. Code § 41-9-60, *et seq*.; *Smith v. Governor of Alabama*, 562 F. App'x 806, 817–818 (11th Cir. 2014) (holding that the procedures of Ala. Code § 41-9-60, *et seq*., provide a meaningful post-deprivation remedy through which a state inmate may seek relief for a loss or denial of property).  "Furthermore, the post-deprivation remedies available to the plaintiff under Alabama tort law [are] sufficient to satisfy due process." *Radford v. Mitchem*, Civil Action No. 2:09-CV-02426-KOB-JEO, *Report and Recommendation adopted,* (N.D. Ala., October 24, 2011); *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (holding "*Hudson* made clear that as long as ***some*** adequate postdeprivation remedy is available, no due process violation has occurred.") (emphasis in original).  In light of the adequate state remedy, any claim that Defendants improperly confiscated Bossio's personal property does not implicate his constitutional right to

due process as the post-deprivation remedies available to him under Alabama law are sufficient to satisfy due process. *Hudson*, 468 U.S. at 534–35. Defendants are entitled to qualified immunity on this claim.[3]

### 2. Access to Courts

Bossio claims Defendants took his legal papers when he was booked into MCDF on August 21, 2017, which deprived him of access to this material. He contends Defendants ignored his repeated requests and grievances seeking access to his legal documents. Doc. 1.

Defendants' evidence includes their affidavits, affidavits from detention facility officials with knowledge of the subject matter of the complaint, and other jail records. Defendants' evidence reflects that pursuant to a request by the United States Marshal, Bossio—a federal inmate—was booked into MCDF on August 21, 2017. Doc. 22-2 at 4–5. On arrival, Bossio had with him a large plastic tote filled with books and a voluminous amount of paper. Bossio's material was deemed "excessive property." Doc. 22-1 at 1; Doc. 22-2 at 1. Pursuant to MCDF policy, inmates are not allowed to possess excessive amounts of paper and books for security reasons as excessive amounts of such material constitutes a fire hazard and it also creates a risk of insect infestation. Doc. 22-1 at 1–2; Doc. 22-2 at 1. Facility policy also directs that inmates may only have in their possession ten letters, ten photos, one religious book, and two library books. Doc.

---

[3] This court has routinely and consistently applied the holding of *Hudson* to dismiss due process claims brought by inmates challenging actions of state officials regarding deprivations of their property. *McClellan v. Alabama*, Civil Action No. 2:11-CV-466-ID, 2011 WL 3423940 (M.D. Ala. 2011); *Flournoy v. Culver, et al.*, Civil Action No. 1:10-CV-104-ID, 2010 WL 916577 (M.D. Ala. 2010); *Dunklin v. Riley, et al.*, Civil Action No. 2:06-CV-1063-MEF, 2009 WL 3624706 (M.D. Ala. 2009); *Malone v. Boyd, et al.*, Civil Action No. 2:09-CV-217-TMH, 2009 WL 1064903 (M.D. Ala. 2009); *Carter v. Valeska, et al.*, Civil Action No. 1:08-CV-858-TMH, 2008 WL 5245618 (M.D. Ala. 2008); *Salmon v. Turner*, Civil Action No. 1:08-CV-554-TMH, 2008 WL 3286982 (M.D. Ala. 2008); and *Todd v. Jones, et al.*, Civil Action No. 3:07-CV-1021-WKW, 2007 WL 4510340 (M.D. Ala. 2007).

22-1 at 12–13.  Excess amounts of property over the allowed amounts are placed in the detention facility's property room.  Doc. 22-1 at 1; Doc. 22-4 at 1.

Bossio submitted a grievance on August 23, 2017, and inmate request forms on August 25, 2017, and September 20, 2017, seeking access to his legal material and claiming the detention facility had no right to take or deny him access to his legal material or books in cases in which he was representing himself.  Doc. 22-2 at 11–13.  Sonya Pritchett ("Pritchett"), Associate Director for MCDF, responded to Bossio on August 30, 2017, and informed him that because of the large volume of material he brought to the detention facility, the material could be provided to him in increments because detention facility inmates were not allowed to possess excessive amounts of paperwork.  Doc. 22-2 at 1–3.  Pritchett spoke to Angela Moorer ("Moorer"), the Administrative Support Associate at MCDF who acts as a liaison with the U.S. Marshal and federal inmates.  Doc. 22-2 at 1–3; Doc. 22-3 at 1–2.  Pritchett and Dill state Moorer informed them Bossio had been provided with paperwork regarding his criminal case on which he was being held but Bossio indicated he wanted to see all of his paperwork held in the property room.  Doc. 22-2 at 1–3 Doc. 22-4 at 1–2.  Moorer communicated with the U.S. Marshal's office on August 30, 2017, regarding the possibility of Bossio obtaining a court order verifying his claim he was representing himself in certain lawsuits to assist jail officials in providing Bossio access to all his legal paperwork.  Doc. 22-3 at 1–2.  On October 30, 2017, detention facility officials gave Bossio access to all the paperwork contained in his personal property.  Doc. 22-2 at 1–3; Doc. 22-3 at 1–2; Doc. 22-4 at 1–2; Doc. 22-5 at 1.  Bossio was again given access to the material on November 21, 2017, and was also allowed to retain in his possession one religious book, two legal books, and two large manila envelopes of legal documents.  Doc. 22-2 at 1–3; Doc. 22-3 at 1–2; Doc. 22-4 at 1–2; Doc. 22-5 at 1.

11

Settled law directs that inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program, or access provided by officials. *Lewis*, 518 U.S. at 349. In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no . . . right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of access to the courts. . . . [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.' " *Id*. at 350-351 (emphasis in original) (citations omitted). The Court further opined *Bounds* did not require "that the State . . . enable the prisoner to *discover* grievances, and to *litigate effectively* once in court. . . . To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires." *Id*. at 354 (emphasis in original). The Court similarly determined that the mere claim of a systemic defect, without a showing of actual injury, did not present a claim sufficient to confer standing. *Id*. at 349. Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356. "*Bounds* . . . guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented,

because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court found that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement. . . . [I]t is that capability . . . that is the touchstone." *Id.* at 356-357. "[T]he Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts—a more limited capability that can be produced by a much more limited degree of legal assistance." *Id.* at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id.* at 356. A federal district court must "scrupulously respect[ ] the limits on [its] role, by not . . . thrust[ing] itself into prison administration and instead permitting [p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements." *Id.* at 363 (internal quotation marks and citation omitted).

Bossio has demonstrated in this case and other cases in this court in which he is a party,[4] that he is both proficient and prolific at presenting and arguing pleadings, motions, and other documents. Although Bossio alleges Defendants confiscated his personal legal property and failed to return such material to him in cases in which he was representing himself, nothing in the record before this court indicates that the challenged lack of access or delay in access to materials improperly impeded or adversely affected Bossio's efforts to pursue nonfrivolous legal claims. Bossio has failed to come forward with any evidence that the actions about which he complains deprived him of the capability of pursuing meritorious claims in this or any other court. Hence,

---

[4] *See Bossio v. Bishop*, 3:16-cv-00839-ECM-JTA (M.D. Ala. 2020); *Bossio v. Taylor*, 3:16-cv-00840-ECM-WC (M.D. Ala. 2019); *United States v. Bossio*, 3:17-cr-00119-WKW-SRW (M.D. Ala. 2019).

Bossio fails to establish that he suffered the requisite actual injury, *Lewis*, 518 U.S. at 356; *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (holding that inmate's access to courts claim failed because plaintiff did not show any actual injury. The actual injury element requires that "the plaintiff must identify within his complaint, a non-frivolous, arguable underlying claim."); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (holding that an inmate is entitled to no relief on an access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage."). Defendants are therefore entitled to qualified immunity on the denial of access to courts claim.

### 3.    First Amendment[5]

In addition to his various legal materials confiscated on his arrival at MCDF, Bossio complains Defendants also confiscated two religious books. Bossio asserts he therefore had no access to those books. Doc. 1.

Defendants maintain that detention facility policy does not allow inmates to have possession of excessive amounts of paper and books to prevent fire hazards and insect infestation. Defendants further state detention facility policy allows inmates to have, among other things, one religious book. Doc. 22-1 at 1-2, 13. It is undisputed there was a delay in providing Bossio access to his religious books. Defendants' state the delay resulted from processing the large amount of personal property Bossio brought with him to MCDF and investigating his inmate requests and grievances regarding his property. Doc. 22-2 at 1–3. After Defendants engaged in discussions regarding how to accommodate Bossio's request for access to all of his personal property, Defendants allowed Bossio an opportunity to review his materials in a room at MCDF specifically designed for that purpose and also gave him a religious book, two legal books, and some of his

---

[5] As explained, Defendants argue Bossio failed to exhaust his claim regarding confiscation of his religious books. Upon review of the record, the court deems it appropriate to address the claim on the merits.

legal work to keep in his possession.  Docs. 22-3 at 1–2; Doc. 22-4 at 1–2; Doc. 22-5 at 1.
Defendants maintain the delay in providing Bossio access to a religious book did not amount to a
substantial burden on the exercise of his religion and that Bossio has produced no evidence they
engaged in any purposeful conduct designed to unreasonably restrict his ability to practice his
religion.  Doc. 21.

Bossio's allegation implicates the Free Exercise Clause of the First Amendment.  Because
prisoners retain constitutional rights, "[w]hen a prison regulation or practice offends a fundamental
constitutional guarantee, federal courts will discharge their duty to protect constitutional rights."
*Turner v. Safley*, 482 U.S. 79,  84 (1987)  (internal quotation marks and citation omitted).
However, "maintaining institutional security and preserving internal discipline are essential goals
that may require limitation or retraction of the retained constitutional rights."  *Bell v. Wolfish*, 441
U.S. 520, 546 (1979).  The proper inquiry in those cases where a prison regulation impinges on an
inmate's constitutional rights is whether the regulation is reasonably related to legitimate
penological interests.  *Turner*, 482 U.S. at 89 (establishing this standard and applying it to a prison
policy prohibiting correspondence among inmates of different institutions); *Thornburgh v. Abbott*,
490 U.S. 401, 404 (1989) (applying this analysis to a prison policy allowing the warden to reject
publications sent to inmates in certain circumstances).  This "reasonableness" test is "less
restrictive than that ordinarily applied to alleged infringements of fundamental constitutional
rights."  *O'Lone v. Shabazz*, 482 U.S. 342, 347-49 (1987) (holding that the *Turner v. Safley*
standard of review is applicable to claims that an inmate's free exercise rights have been violated).

In *Turner*, the Supreme Court delineated four factors relevant to determining whether a
prison regulation infringes on a prisoner's constitutional rights: (1) is there a valid, rational
correlation between the prison regulation and the legitimate governmental interest advanced; (2)

are there alternative means of exercising the rights that remain available to the prisoner; (3) what is the impact of an accommodation in favor of the inmate on prison staff, other prisoners, and the allocation of prison resources generally; and (4) do alternatives exist that would accommodate the prisoner's rights at little cost to valid prison interests. *Id*. 482 U.S. at 89-91. However, a "court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors." *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (interpreting the decision in *Turner* as stating that a court need not weigh evenly or even consider each factor, as rationality is the controlling standard).

A "prison regulation, even though it infringes the inmate's constitutional rights, is an actionable constitutional violation only if the regulation is unreasonable," *Hakim v. Hicks*, 223 F.3d 1244, 1247 (11th Cir. 2000), and burdens the practice of the inmate's religion or restricts his free exercise of a sincerely held religious belief. *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *O'Lone*, 482 U.S. at 349; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The burden must be substantial and significantly interfere with an inmate's practice of his religious beliefs. *Hernandez*, 490 U.S. at 699. Thus, before considering application of the "reasonableness" test of *Turner*, a court must first determine whether a plaintiff has been substantially burdened in his religious practice. "[T]he First Amendment is implicated when a law or regulation imposes a substantial, as opposed to inconsequential, burden on the litigant's religious practice." *Levitan v. Ashcroft*, 281 F.3d 1313, 1320 (D.C. Cir. 2002) (citing *O'Lone*, 482 U.S. at 351); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 565 (1993) (internal quotation marks omitted) (finding "[o]ur cases have established that [t]he free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice"); *Branch Ministries v. Rossotti*, 211 F.3d 137, 142 (D.C. Cir. 2000) (holding that, to

sustain its claim under [] the Constitution . . . , a plaintiff must first establish that its free exercise right has been substantially burdened).

Defendants argue that Bossio has not demonstrated that the delay in receiving his religious book substantially burdened the exercise of his religion.  Bossio maintains Defendants confiscated his religious book because they did not like the title—"Spells, Ceremonies, and Magic."  Doc. 24 at 6.  There is no dispute, however, that after processing and investigating his requests for his property Defendants arranged Bossio's access to his personal material and he received possession of one of his religious books.  And despite Bossio's contention that MCDF's policy refers to inmates being allowed one Bible and one Koran thereby disallowing other religions and being the reason for denying him his religious book (Doc. 24 at 6), review of MCDF's inmate rules and regulations shows that detention center policy references "One (1) Religious Book and Two (2) Library Books" as the type of books inmates may have in their possession at one time.  Doc. 22-1 at 13.

Defendants' initial denial regarding Bossio's ability to retain all of his personal property and their subsequent delay in giving Bossio possession of a religious book while investigating and processing his requests to access his personal property does not amount to actionable conduct under the circumstances of this case.  Bossio's allegations regarding a delay in giving him one of his religious books fail to provide specific facts to show how the challenged conduct substantially impeded his ability to practice his religious beliefs and fall far short of demonstrating that the Defendants substantially burdened his First Amendment rights.  The undisputed evidence reflects Bossio made no specific reference to or request for his religious books in his grievances challenging the denial of his legal materials and books.  And Bossio makes no allegation that the temporary absence of a religious book impacted an essential or fundamental practice of his religion

nor has he alleged or offered any evidence he could not engage in other religious practices and express his faith without his religious book.

The court finds Bossio has not met his burden of demonstrating that the disputed conduct substantially burdened his sincerely held religious beliefs.  No evidence has been presented that the initial denial and subsequent delay in Bossio's receipt of a religious book imposed a "substantial burden" on the practice of his religion or on his ability to engage in conduct compelled by his faith.  While Defendants' conduct may constitute unintentional interference with Bossio's religious exercise, the record is devoid of any evidence jail personnel purposefully engaged in any conduct designed to unreasonably restrict his ability to observe his religion.  *See Employment Div. v. Smith*, 494 U.S. 872, 877 (1990); *Turner*, 482 U.S. 78; *Canedy v. Boardman*, 91 F.3d 30, 33 (7th Cir. 1996) (holding an inmate's free exercise right does not "depend upon his ability to pursue each and every aspect of the practice of his religion").  Because Bossio has failed to demonstrate Defendants unreasonably interfered with his access to his religious book or with his ability to otherwise engage in the practice of his religion, Defendants are entitled to qualified immunity on his First Amendment claim.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Docs. 20, 21, 22) be GRANTED.

2. This case be DISMISSED with prejudice.

3.  Judgment be ENTERED in favor of Defendants.

4. Costs be TAXED against Plaintiff.

**On or before February 5, 2021,** the parties may file an objection to the Recommendation. Any objections filed must specifically identify the factual findings and legal conclusions in the

Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file an objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993);  *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 21st day of January, 2021.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE